Filed 1/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re BRIANNA S. et al., Persons Coming Under the Juvenile Court Law. | B301802 (Los Angeles County Super. Ct. No. CK88481D-F) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MERCEDES G., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Judge Pro Tempore. Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

A juvenile court places a child who has been declared a dependent with a relative and declares the relative to be a "de facto parent." When the social services agency later seeks to remove the child from the relative, which set of procedures should the juvenile court follow—those set forth in Welfare and Institutions Code section 385 or those set forth in section 387?[1] We conclude that section 387 governs. Although the juvenile court followed the incorrect procedures in this case, its error was not prejudicial. Accordingly, we affirm the removal orders in this case.

## FACTS AND PROCEDURAL BACKGROUND

### I.     The Family

Melanie M. (mother) and Bobby S. (father) have six children, three of whom are at issue in this case—12-year-old Brianna, eight-year-old Amanda, and seven-year-old Nature. Mercedes G. is the maternal grandmother (grandmother).

### II.     Juvenile Court's Assertion of Dependency Jurisdiction

The juvenile court declared all three children to be dependents based on the parents' domestic violence and substance abuse. Brianna has been a dependent since September 2011; Amanda, since October 2012; and Nature, since June 2016.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

### III. Grandmother Becomes a De Facto Parent and Takes Custody of Children

In May 2015, grandmother asked the juvenile court to declare her a de facto parent. The court granted her request in July 2015.

The juvenile court placed all three children with grandmother in July 2016.[2]

### IV. Grandmother's Care of Children

While in grandmother's care, the mental or emotional health of all three children has deteriorated.

Brianna now "isolates herself" and is "very disrespectful" to others, often using profanity.

Amanda has developed severe behavioral issues. In 2017, Amanda began acting out by throwing tantrums, cursing, and hitting her little sister as well as other kids at her school. Her behavior has since escalated. By 2019, Amanda's tantrums graduated not only to hitting, but also to throwing objects and tearing things off of walls. Amanda had also tried to kill the family pets, including through poisoning their drinking water. In nearly all her interactions, Amanda grew to be "defiant" and "uncontrollable." In mid-July 2019, Amanda's physically aggressive conduct prompted grandmother to check Amanda into UCLA's mental health facility. Amanda was forced to remain there for two weeks because grandmother, for nearly a week, refused to authorize UCLA to administer the medications Amanda needed. In August and again in September 2019, grandmother unsuccessfully tried to check Amanda back into

---

[2] The juvenile court for a time issued an order prohibiting the children from being removed from grandmother's custody, but later rescinded that order.

mental health facilities. Grandmother repeatedly threatened Amanda with "be[ing] institutionalized." At least one psychologist opined that *grandmother* was the root cause of Amanda's behavioral issues.

Nature started destroying property by scratching tables and putting holes in walls. Nature also displayed sexualized behaviors.

Possibly due to her own mental health issues, grandmother ignored the children's deteriorating mental and emotional health. Both Amanda and Nature needed counseling services, but grandmother never sought out those services. Indeed, grandmother rebuffed the Los Angeles County Department of Children and Family Services' (the Department) offers to assist: Grandmother was "extremely difficult to work with," regularly denying access to her home and yelling at Department workers. Grandmother was more generally neglectful as well, often times getting the children to school late, leaving the children without supervision, or dropping them off with other relatives without any plan to retrieve them.

Grandmother has admitted that she is "overwhelmed." In September 2019, she asked the Department to place Brianna somewhere else and said she "can't" continue parenting Amanda "anymore." Just a few months earlier, grandmother had told Nature that she was going to ask the Department to take Nature to another home.

## V. The Department's Efforts to Remove the Children from Grandmother

### A. *The Department's first section 387 petition*

In May 2019, the Department filed a petition, pursuant to section 387, asking the juvenile court to remove all three children from grandmother's custody and place them elsewhere, citing

grandmother's inability and unwillingness "to provide appropriate care and supervision of the children."

In July 2019, the juvenile court denied the petition with prejudice.

### B. *The Department's second section 387 petition*

On October 9, 2019, the Department gave notice to grandmother that it was seeking to remove the children from her custody.

Exactly 15 days later, the Department filed a petition, pursuant to section 387, seeking to remove the children from grandmother's custody and place them in foster care. The petition alleged that the children were at risk of serious physical harm and damage due to (1) grandmother's inability to establish that her home meets the minimum "RFA requirements,"[3] (2)

---

3   The resource family approval (RFA) process is the current process for "approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families." (§ 16519.5, subd. (a).) A resource family is "an individual or family that has successfully met both the home environment assessment standards and the permanency assessment criteria" established by statute and the State Department of Social Services (*id.*, subds. (c) & (d)) and only then are "considered eligible to provide foster care for children in out-of-home placement and approved for adoption and guardianship." (*Id.*, subd. (c)(4)(A) & (5).)

The home environment assessment and the permanency assessment involve the collection and review of a comprehensive amount of personal information. A family home environment assessment includes a criminal record clearance for each applicant and all adults residing in or regularly present in the home (denizen), consideration of any substantiated child abuse allegation against the applicant and any denizens, and a home and grounds evaluation. (§ 16519.5, subd. (d)(2).) A permanency

5

grandmother's "fail[ure] to obtain mental health treatment" for Amanda, and (3) grandmother's emotional abuse of Amanda by threatening to have her institutionalized.

The juvenile court convened a hearing on the petition on October 25, 2019. At the hearing, the Department formally withdrew its section 387 petition based on its view that "no 387 petition is needed" when removing a child from a "de facto parent." Instead, the Department asked for removal based on section 385. The juvenile court "construe[d] the 387 [petition] as a 385 [request]," and entertained argument from grandmother's counsel. Based on the content of the Department's report, the court found that it was "in the best interest of these children to be removed" from grandmother's care, and that their "physical," "mental and emotional health" was "at risk" were they "to remain in the care of" grandmother. The court accordingly ordered the children removed from grandmother's custody and ordered the Department to make "every effort to place all three children together" in their next placement.

**VI. Appeal**

Grandmother filed this timely appeal.

---

assessment includes a psychosocial assessment of an applicant and the results of a risk assessment. The risk assessment includes, but is not limited to, the applicant's physical and mental health, alcohol and other substance abuse, family and domestic violence, and the applicant's understanding of children's needs and development, particularly children who have been victims of child abuse and neglect, and the capacity to meet those needs. A successful applicant must also demonstrate the ability to ensure the stability and financial security of the family. (*Id.*, subds. (c)(1) & (d)(3).)

6

**DISCUSSION**

Grandmother does not challenge the sufficiency of the evidence supporting the removal of the children from her custody. Instead, she asserts that the juvenile court erred procedurally by effectuating the removal under section 385 rather than section 387. Thus, this appeal presents two questions: (1) did the juvenile court rely on the wrong procedural vehicle, and if so, (2) was this procedural error prejudicial?

The first question presents a question of statutory interpretation, and is therefore a legal question we review de novo. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 205.) Because the juvenile court ended up adhering to the procedural steps attendant to section 387, the second question of prejudice turns on whether substantial evidence supports the juvenile court's removal order. (*In re D.D.* (2019) 32 Cal.App.5th 985, 990 (*D.D.*).)

## I.    The Proper Procedural Vehicle Is Section 387

### A.    *Forfeiture*

Grandmother did not object to the juvenile court's decision to evaluate the Department's removal request under section 385 rather than section 387. She thereby forfeited this objection. (E.g., *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502.) However, "an appellate court may consider a claim raising an important question of law despite" a forfeiture where the case "'present[s] an important legal issue.' [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7.) The question of which procedural vehicle is appropriate when a juvenile court removes a child from placement with a relative is just such a question. We accordingly exercise our discretion to reach the merits of this question despite grandmother's forfeiture.

7

### B. *The merits*

#### 1. *The two procedural vehicles*

##### a. Section 385

Section 385 authorizes a juvenile court to "change[], modif[y], or set aside" "[a]ny order made by the court" regarding a dependent child "as the judge deems meet and proper, subject to such procedural requirements as are imposed in this article." (§ 385; accord, Cal. Rules of Court, rule 5.560(a).)  The sole procedural prerequisite to a juvenile court's exercise of authority under section 385 is that the court "provide[] the parties with notice and an opportunity to be heard."  (*M.L. v. Superior Court* (2019) 37 Cal.App.5th 390, 399 (*M.L.*); *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 98 (*Nickolas F.*).)

##### b. Section 387

Section 387 authorizes a juvenile court to "chang[e] or modif[y] a previous [placement] order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing" a different placement.  (§ 387, subd. (a); Cal. Rules of Court, rule 5.560(c); *In re Victoria C.* (2002) 100 Cal.App.4th 536, 542-543.)

A court exercising its authority under section 387 must satisfy three procedural prerequisites.

First, one of the parties must file a supplemental petition setting forth "a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the . . . protection of the child or, *in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3.*"  (§ 387, subd. (b); Cal. Rules of Court, rule 5.560(c); *D.D.*, *supra*, 32 Cal.App.5th at p. 989; *In re H.G.* (2006) 146 Cal.App.4th 1, 11.)

Second, the court must convene a "noticed hearing" within 30 days of its filing of the supplemental petition and the party filing the petition must give notice of the petition at least five days in advance of the hearing where, as here, the child remains in her current custody placement. (§§ 387, subd. (a), 297, subd. (b)(1), 290.2, subd. (c)(1); Cal. Rules of Court, rule 5.565(c)(1).)

Third, the court must decide whether (1) the allegations in the supplemental petition are true, and (2) whether it is appropriate to change or modify the previous placement order by removing the child from her current placement. (*D.D.*, *supra*, 32 Cal.App.5th at pp. 990, 996; Cal. Rules of Court, rule 5.565(e).) Whether modification and removal is appropriate depends upon the identity of the current custodian: If the section 387 supplemental petition seeks to remove the child from her "parent" or "guardian," the court must make removal findings under section 361, subdivision (c)—that is, the court must find, by clear and convincing evidence, that "there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home," that there are no reasonable means short of removal to protect the minor, and that the Department made reasonable efforts to avoid removal. (§ 361, subd. (c)(1); *In re Paul E.* (1995) 39 Cal.App.4th 996, 1001-1003; *In re Javier G.* (2006) 137 Cal.App.4th 453, 462; *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1201, fn. 14 (*Joel H.*); *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163; but see *In re A.O.* (2010) 185 Cal.App.4th 103, 111-112 [not so requiring].) But if the section 387 petition seeks to remove the child from other caregivers (such as the child's relative), the court need only find that the relative is "no

9

longer able to provide the . . . child a secure and stable environment." (*Joel H.*, at p. 1201.)

2. *The appropriate procedural vehicle when the Department seeks to remove a child from a relative*

Where, as here, the Department seeks to change or modify a prior order placing a dependent child with a relative, the juvenile court must proceed under section 387 rather than section 385. Three reasons dictate this conclusion.

First, the plain language of section 387 so dictates. Section 387 itself says that it applies to "[a]n order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, *relative* or friend . . . ." (§ 387, subd. (a), italics added; e.g., *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 560, fn. 4 [so noting].) This plain language is dispositive. (*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 874 ["Where, as here, a statute's plain text is unambiguous, our analysis begins and ends with that text"].) And here, there is no question that grandmother is a "relative." (§ 361.3, subd. (c)(2) [defining "relative" as including "all relatives whose status is preceded by the word[] . . . 'grand'"].)

Second, sections 385 and 387 both regulate a juvenile court's authority to modify its dispositional orders, but section 385 applies to the modification of orders generally and section 387 applies more specifically to the modification of prior placement orders. Because "'a specific statutory provision relating to a particular subject controls over a more general provision' [citation]" (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 104; *In re Shull* (1944) 23 Cal.2d 745, 750 ["It is the general rule that a special statute controls over a general statute"], superseded by statute on other grounds as stated in *People v. Read* (1983) 142 Cal.App.3d 900, 904), section

10

387's more specific provisions apply where, as here, what is at issue is the modification of a prior placement order. Indeed, section 385 expressly defers to the more specific 387 because section 385 notes that it is "subject to such procedural requirements as are imposed by this article" (§ 385), and section 387 is in the same article. (Accord, *In re Marilyn H.* (1993) 5 Cal.4th 295, 305 ["Section 385 clearly does not give the juvenile court discretion to modify its previous order in the absence of compliance with the procedural requirements set forth [elsewhere] in article 12"].)

Third, the weight of precedent supports the conclusion that section 385 is reserved for use in situations not otherwise addressed by the more specific procedures set forth in 387 and 388. (*Nickolas F.*, *supra*, 144 Cal.App.4th at pp. 103, 106, 113-114; *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501-1502.) Thus, section 385 is usually used when the juvenile court wishes to modify one of its prior orders *sua sponte*—that is, not in response to a supplemental petition by the Department under section 387 or to a petition for modification by a parent or guardian under section 388. (*In re S.B.* (2004) 32 Cal.4th 1287, 1297, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; *In re J.P.* (2020) 55 Cal.App.5th 229, 241; *M.L.*, *supra*, 37 Cal.App.5th at p. 399; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1160; *Nickolas F.*, at pp. 98, 116; cf. *In re Luke H.* (2013) 221 Cal.App.4th 1082, 1089 [section 385 does not provide residual authority regarding the placement of children who are *not* dependents subject to the juvenile court's jurisdiction].)

The Department argues that a relative's status as a de facto parent somehow negates the above described analysis. It

does not.  A de facto parent is "'a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, . . . and who has assumed that role for a substantial period.'" (*In re A.F.* (2014) 227 Cal.App.4th 692, 699, quoting Cal. Rules of Court, rule 5.502(10).)  Designating a person as a de facto parent gives that person "*procedural* rights" in the ongoing dependency proceedings, such as the right to be present at hearings, to be heard and to retain counsel, but de facto parent status does not grant the person any *substantive* rights to "reunification services, . . . custody, [or] continued placement of the child." (*Id.* at p. 700.)  De facto parent status has nothing to do with which procedural vehicle a juvenile court must follow when modifying a placement order where, as here, the de facto parent is *also* a "relative."  That is because, as noted above, section 387 expressly applies when the court is modifying a prior placement order "by removing a child from the physical custody of a . . . *relative.*" (§ 387, subd. (a), italics added.)  To hold otherwise is to accord relatives who have attained de facto parent status *fewer* procedural rights than those who have not.  It is therefore not surprising that juvenile courts regularly adhere to the procedures in section 387 when modifying prior orders that placed dependent children with relatives, even when those relatives have also been designated as de facto parents. (E.g., *Joel H.*, *supra*, 19 Cal.App.4th at pp. 1199-1200; *In re Jonique W.* (1994) 26 Cal.App.4th 685, 690-691.)

## II.    The Procedural Error Was Not Prejudicial

Like most other errors, procedural errors by the juvenile court require reversal only if they result in a "miscarriage of justice." (Cal. Const., art. VI, § 13; *In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)  An order does not result in a miscarriage of

12

justice if the court's order is "substantively correct," even if the court "committed" a "procedural error" along the way. (*In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1313.)

The juvenile court's error in evaluating the Department's request under section 385 rather than section 387 was not prejudicial for two reasons.

First, the Department's initial decision to follow all of the section 387 procedures up until its last-minute change of mind means that grandmother was effectively accorded all of the process she was due under section 387. The Department filed a supplemental petition with the appropriate content;[4] the Department gave notice of its intention to seek removal of the children from grandmother more than 14 days before the petition as part of a "placement change request" (§ 16010.7, subds. (e) & (i)); and the juvenile court held a timely hearing at which it allowed grandmother the opportunity to argue against the Department's request. These procedures also far surpassed what is necessary to satisfy due process, as grandmother was accorded both notice and the opportunity to be heard. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)

Second, the juvenile court's modification order is supported by substantial evidence. Where, as here, the person whose continued custody is at issue is not a parent or guardian, the

_____

4      By alleging grandmother's failure to seek services for Amanda and her emotional abuse of Amanda, the supplemental petition explained why continued placement with grandmother was not appropriate under the criteria set forth in section 361.3, which includes the ability of the relative to "[p]rovide a safe, secure, and stable environment" and to "[e]xercise proper and effective care." (§ 361.3, subd. (a)(7)(A) & (B).)

juvenile court need only find that the relative-custodian is "no longer able to provide the . . . child a secure and stable environment." (*Joel H.*, *supra*, 19 Cal.App.4th at p. 1201.)  More than ample evidence supported such a finding here:  All three girls had behavioral problems, and those experienced by Amanda and Nature were severe and worsening; grandmother was refusing to address those problems; and grandmother repeatedly admitted and/or lamented that she was unable to do so and was, instead, overwhelmed.  Indeed, grandmother does not really argue to the contrary.  The most she argues on appeal is that she had a strong bond with the three girls.  This argument is supported by the record, but does not negate the factual basis for the juvenile court's ruling.  To the extent grandmother is inviting us to weigh the evidence differently, this is an invitation we must decline.  (E.g., *People v. Brown* (2014) 59 Cal.4th 86, 106 ["[w]e do not reweigh evidence"].)

### DISPOSITION

The orders are affirmed.

### CERTIFIED FOR PUBLICATION.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

14