[No. G029830. Fourth Dist., Div. Three. July 24, 2002.]

In re VICTORIA C., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
CHAD C., Defendant and Appellant;
BECKY C., Defendant and Respondent.

**COUNSEL**

Marsha Faith Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Benjamin P. deMayo, County Counsel, and Ward Brady, Deputy County Counsel, for Plaintiff and Respondent.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Respondent.

Jennifer Mack, under appointment by the Court of Appeal, for Minor.

**OPINION**

**MOORE, J.**—Chad C. (the father), the presumed father of 10-year-old Victoria C. (the minor), challenges the juvenile court's summary dismissal of his Welfare and Institutions Code[1] section 388 petition seeking modification of the court's custody order and requesting the removal of the minor from the custody of her mother, Becky C. (the mother). We conclude the court erred, but find the error harmless and affirm the judgment.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

I

FACTS

The minor's parents have never been married and do not currently live together. Pursuant to family court proceedings, the minor lived with her mother and visited her father every other weekend and on Wednesdays. The minor's parents have ongoing problems regarding custody and visitation. As a result, the father filed 14 custody order violation police reports in the first seven months of 2000.

The family came to the attention of Orange County Social Services Agency (SSA) in July 2000. The mother told authorities the father hit the minor on numerous occasions, which left marks and bruises, and burned the minor with a glue gun. She also reported other instances of physical abuse dating back to 1998. The mother also reported that the minor had twice been hospitalized for suicidal ideation and depression, took medication for depression, and was involved in ongoing individual and group counseling. The minor frequently indicated that she did not want to visit her father.

When contacted by SSA, the father acknowledged he had used inappropriate physical force to discipline the minor and occasionally argued with the mother in front of the child, but also claimed the mother verbally abused the minor and contributed to the minor's reluctance to visit him. The father had voluntarily taken anger management and parenting courses, but continued to have problems with the mother.

In late July 2000, SSA advised the mother to obtain a restraining order prohibiting the father from contacting the minor. SSA took the minor into protective custody when the mother failed to follow through in a timely manner. The minor was immediately released to the mother's custody.

On August 8, SSA filed a dependency petition alleging the minor suffered serious physical and emotional harm (§ 300, subds. (a), (c)), and the mother knew of the harm and failed to protect the minor (§ 300, subd. (b)). The mother and the father pleaded no contest to the allegations and the court declared the minor to be a dependent child of the juvenile court. The court ordered the minor to remain in the mother's custody, with weekly monitored visitation with the father, and the preparation of a psychological evaluation of the minor.

In April 2001, the minor arrived for a supervised visit with the father wearing "a black ski mask, screaming, and crying, and refused to visit with

her father." The night before, the minor wrote a "good-bye letter" to her family, threatened other children in her household with a knife, and appeared to be responding to auditory and visual hallucinations. The minor's counselors recommended she stop visiting with the father and the father agreed to temporarily discontinue visitation. However, the social worker noted in an interim report that she was "puzzled with this situation." She observed that the mother had not timely reported the minor's hallucinations, suicide note, or threatening behavior. The social worker stated, "It appears the only emergency in the mother's mind was getting the visits with the father stopped."

On May 16, the court terminated the father's visitation and ordered Psychologist Dr. David Garland to prepare an Evidence Code section 730 evaluation of the minor and her parents. Dr. Garland concluded both parents had demonstrated poor judgment with respect to their treatment and interaction with the minor, but that "if [the minor] is allowed to continue to [live] with her mother at this time, she will continue to demonstrate periods of decompensation." Dr. Garland averred, "[T]hat dramatic measures would need to be taken to sever the pathological ties that [the minor] has with [the] mother, and to enable her to have a positive relationship with both parents. As long as [the minor] continues in the custody of her mother there is no chance of her having a positive relationship with her father." He recommended placement in "a highly structured Group Home or residential treatment setting," with monitored visitation for both parents.

On July 13, SSA filed a supplemental petition under section 387. The petition alleged, referring to Dr. Garland's report, that the mother subjected the minor to "emotional abuse," " 'interfered with the [minor's] relationship with [the] father,' " and " 'demonstrated poor judgment to the detriment of [the minor].' " Notwithstanding the evaluation, the court dismissed the supplemental petition three days later, "without prejudice on motion of [County Counsel]." All parties stipulated to the dismissal and the case was continued for a six-month review hearing, leaving the prior custody order and order prohibiting the father's visitation intact.

Before the review hearing, the father filed a section 388 petition for modification of the court's custody and visitation orders, requesting that "The minor be removed from the care of her mother and the father resume visitation . . . ." According to the father's declaration, the supplemental petition was dismissed because there was no alternative placement available. The father had relinquished visitation rights in hopes of improving the situation, but now wanted to resume visitation with the minor. With respect to the request for removal, the father stated, "Nothing has changed since the

social worker originally filed the supplemental petition. In fact, my daughter has been allowed to remain in a home where she is subjected to emotional abuse and put in the role of being a parent to her mother. I feel that it would be in my daughter[']s best interest to be removed from her mother's care based on the results of the 730 evaluation. I feel that I need to protect my daughter's interests since the social services agency has not yet refiled the supplemental petition."

County counsel opposed the father's removal request, arguing "[T]he bottom line is the Legislature has put the duty of investigation on the social worker and the filing of the petition on the social worker and it is the sole discretion of the social worker when it comes to removal from the parent. And there's nothing contrary to that in the case or statutory law." The court agreed: "[T]he relief sought regarding the minor being removed from the care of her mother is not permitted under the statute, nor case law that has been cited to me. So I'll not address that issue in the 388. [¶] However, the issue of visitation is clearly within the realm of the court regarding a 388, so we are going to hear the 388. I'll order it be filed in regards to visitation. However, that issue runs concurrent with the [six-month] review hearing . . . I'm granting an evidentiary hearing regarding visitation."

During the combined hearing, the court admitted SSA reports and Dr. Garland's report, and received the testimony of Dr. Garland, the social worker, and the minor. Dr. Garland reiterated his opinion that the mother "repeatedly attempted to alienate the [minor] from her father," was "not really able to focus appropriately on the [minor's] needs," and posed an "emotional risk" to the minor. It was his opinion, "that as long as the [minor is] in the custody of her mother . . . the mother will continue to undermine that relationship and interfere with any relationship between the [minor] and her father." Dr. Garland acknowledged the father's prior physical and emotional abuse of the minor. Without minimizing the damage the father had caused, Dr. Garland recommended "something dramatic . . . to take [the minor] out of her mother's home and to put her in a neutral setting where therapeutic efforts can be attempted."

The minor, who testified outside the presence of her parents, stated, "I do not want to see my dad because of how he hurt me and when I'm around him, I can still feel the anger and sadness that he put me through and I hate him. I would not want visitations with him. I would love to live with my mom and to stay with her because I don't like my dad." However, she later indicated that she would attempt monitored visitation with the father and counseling if ordered by the court.

The social worker testified that despite the filing of the supplemental petition, SSA did not recommend removing the minor from the mother's custody.

At the conclusion of the hearing, the court retained jurisdiction, ordered custody of the minor to remain with the mother under the supervision of SSA, and visitation with the father, "to begin only after a therapist feels it's appropriate . . . ." This appeal followed.

## II

### DISCUSSION

■ County counsel, the father, and the minor agree the court erred by summarily dismissing the portion of the father's section 388 petition requesting the minor be removed from the mother's home. The mother, relying on *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067 [117 Cal.Rptr.2d 670] (*Kimberly R.*) and *Allen M. v. Superior Court* (1992) 6 Cal.App.4th 1069 [8 Cal.Rptr.2d 259] (*Allen M.*), and adopting county counsel's position in the trial court, argues the father's sole remedy was a timely objection to the dismissal of the section 387 supplemental petition and that his failure to object constitutes a waiver of the issue.

■ To resolve the procedural conundrum with which we are faced, a brief overview of dependency proceedings is in order: "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "Dependency proceedings are proceedings of an ongoing nature. While different hearings within the dependency process have different standards and purposes, they are part of an overall process and ongoing case. One section of the dependency law may not be considered in a vacuum. It must be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]" (*Ibid.*)

When a child comes to the attention of governmental authorities and a social worker determines the child must be detained, a section 300 "original" petition must be timely filed to commence proceedings to adjudge the child a dependent of the juvenile court. (§ 325; Cal. Rules of Court, rule 1406(b).[2]) A "subsequent" petition is filed when jurisdiction has been established and the petitioner alleges new facts or circumstances, other than those sustained in the original petition, warranting continuation of jurisdiction. (§ 342; rule 1430(b).) "Supplemental" petitions are filed if the social worker determines the previous disposition order has not been effective and it is necessary to remove "the child from the physical custody of a parent,

---

[2]All further rules references are to the California Rules of Court.

guardian, relative, or friend and direct[] placement in a foster home, or commitment to a private or county institution. . . ." (§ 387; see also rule 1430(c).) In each instance, the social worker initiates proceedings by the filing of a petition.

 Once the court has taken jurisdiction over a dependent child, "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court [a person with standing in the dependency action] . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside *any* order of court previously made or to terminate the jurisdiction of the court." (§ 388, italics added.) Because the statute states "any" order, we presume the Legislature · intended to permit liberal use of this procedure to challenge all types of orders in an ongoing case, including custody and placement orders. (See *Kimberly R., supra,* 96 Cal.App.4th at p. 1077 ["A section 388 petition may seek any conceivable change or modification of an existing order."].) Further, a broad interpretation of the statutory language comports with the purpose of section 388. (*In re Marilyn H., supra* 5 Cal.4th at pp. 308-309 ["the parent has the continuing right to petition the court for a modification of any of its orders based upon changed circumstances or new evidence pursuant to section 388"].) It appears the only difference between a request for removal of a child from a parental home and any other order is a more stringent burden of proof: a request for removal from a parental home, or to a "more restrictive placement," requires clear and convincing evidence that grounds for removal exist. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 549 [247 Cal.Rptr. 784]; rule 1432(f).)[3] Thus, the father's section 388 modification petition was an appropriate procedural vehicle to seek removal of the minor from the mother's custody, and the juvenile court erred by concluding otherwise.

The mother's reliance on *Kimberly R.* and *Allen M.* is misplaced. Both cases addressed the agency's obligation to justify a request for dismissal following the filing of a section 300 original petition (*Allen M.*), or a section 387 supplemental petition (*Kimberly R.*), concluding that an objecting party may force a hearing for which the agency bears the burden of proof. (*Kimberly R., supra,* 96 Cal.App.4th at pp. 1077-1078; *Allen M., supra,* 6 Cal.App.4th at p. 1074.) Neither case addressed what procedure is available to a noncustodial parent to challenge a custody order, although the *Kimberly*

[3]Rule 1432(f) refers to section 361, subdivision (b) to describe the circumstances warranting removal of a child from the child's home and to set forth the burden of proof. The reference to subdivision (b) appears to be a clerical error. In 1997, the Legislature amended section 361 by adding a new subdivision (b) relating to relinquishment of a child and redesignating former subdivisions (b) to (d) as new subdivisions (c) to (e), respectively. (Stats. 1997, ch. 793, § 15.)

*R.* court did mention, "a section 388 'modification hearing' petition can ultimately result in removing a child from parental custody (on the higher clear and convincing standard). . . ." (*Kimberly R., supra,* 96 Cal.App.4th at p. 1077 [dicta].)

Nor are we convinced a "waiver rule" should apply because a timely objection to SSA's dismissal of the supplemental petition was the most expeditious way to challenge the court's custody order. Here, the father did not object to the dismissal because no group home placement was available and he thought the situation might improve. When no improvement was forthcoming, he filed the section 388 petition. Based on the facts of this case, the father's decision to stipulate to the dismissal was appropriate. We see no reason to punish him for his patience; neither the statutory framework nor public policy considerations require it.

Although the erroneous denial of a hearing on a section 388 petition is not necessarily harmless (see *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1800-1801 [53 Cal.Rptr.2d 294]), we find no reason to reverse the judgment and order a second hearing here. The juvenile court must address the "continuing necessity for and appropriateness of the [child's] placement" at every periodic review hearing when parental custody is supervised. (§§ 361.2, subd. (b)(2)), 366, subd. (a)(1)(A).) The court conducted a contested review hearing, during which it admitted the declaration submitted with the father's section 388 petition, SSA reports, Dr. Garland's report and his testimony, and the testimony of other witnesses. After careful consideration of the evidence and the arguments of counsel, the court reaffirmed its previous custody order. The court's mistaken belief it lacked jurisdiction to change or modify its custody order pursuant to the father's section 388 petition did not prevent the parties from presenting evidence and arguing their respective cases, and the father has failed to point to any evidence that would be presented at a second hearing. Thus, the court's procedural error did not infringe on the father's right to due process.

■ The mother also claims the father's section 388 petition was "facially insufficient" to justify a hearing because it failed to allege any changed circumstances warranting removal of the minor. We disagree. The father challenged the court's May 16 disposition order, not the later dismissal order. Thus, all the facts and circumstances alleged in the father's section 388 petition were changed circumstances or new evidence as to that order.

We decline to address county counsel's alternative contention that the father should have requested the initiation of new dependency proceedings,

pursuant to sections 329 and 331.[4] We have determined a noncustodial parent may file a section 388 petition to seek the removal of a dependent minor from the home of the custodial parent. We need not render an advisory opinion on whether the father had other remedies available to him, or if the court could have construed an appropriately filed section 388 petition as something else. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 860 [39 Cal.Rptr.2d 21, 890 P.2d 43].)

## III

### DISPOSITION

The orders of the juvenile court are affirmed.

Sills, P. J., and O'Leary, J., concurred.

---

[4]Section 329 provides, "Whenever any person applies to the social worker to commence proceedings in the juvenile court, the application shall be in the form of an affidavit alleging that there was or is within the county, or residing therein, a child within the provisions of Section 300, and setting forth facts in support thereof. The social worker shall immediately investigate as he or she deems necessary to determine whether proceedings in the juvenile court should be commenced. If the social worker does not take action under Section 330 and does not file a petition in the juvenile court within three weeks after the application, he or she shall endorse upon the affidavit of the applicant his or her decision not to proceed further and his or her reasons therefor and shall immediately notify the applicant of the action taken or the decision rendered by him or her under this section. The social worker shall retain the affidavit and his or her endorsement thereon for a period of 30 days after notifying the applicant."

Section 331 provides, "When any person has applied to the social worker, pursuant to Section 329, to commence juvenile court proceedings and the social worker fails to file a petition within three weeks after the application, the person may, within one month after making the application, apply to the juvenile court to review the decision of the social worker, and the court may either affirm the decision of the social worker or order him or her to commence juvenile court proceedings."