Filed 7/16/21  In re D.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | |
| | D078474 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519828A-B) |
| v. | |
| W.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Reversed and remanded with directions.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency action, the San Diego County Health and Human Services Agency (Agency) filed petitions pursuant to Welfare and Institutions

Code section 388[1] seeking to modify the juvenile court's prior orders placing the minor children (D.M. and S.M.) in their parents' custody. Father (M.W.) appeals from the court's January 4, 2021 orders granting the Agency's petitions and removing the children from his care.[2] Father raises numerous challenges to the orders, but we only need to consider one to resolve this appeal. We agree with Father's contention that the court abused its discretion by not applying the correct legal standard in granting the Agency's section 388 petitions to remove the children from Father's custody, and we therefore reverse the orders and remand with directions. We need not address Father's remaining arguments regarding the sufficiency of the evidence or his claim that the Agency was required to file its petitions under a different statute (section 342) rather than section 388.

FACTUAL AND PROCEDURAL BACKGROUND

While Father and Mother (G.N.) were in a relationship, they had two sons, D.M., born in 2015, and S.M., born in 2016. In August 2018, the children, then three and two years old, were in Mother's sole physical custody living in a homeless shelter. The Agency received a referral that Mother was an alcoholic, she often left the shelter in the middle of the night (leaving the children unattended), and she returned intoxicated at times. The referral also reported that the children appeared dirty and wore dirty clothing.

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    We consider this appeal concurrently with Father's petition for extraordinary writ in case No. D078633, in which he challenges the juvenile court's subsequent orders, dated February 17, 2021, granting the Agency's section 387 petitions, terminating his reunification services, and setting a section 366.26 permanency planning hearing.

2

A subsequent referral reported that Mother left D.M. and S.M. at the shelter at 8:30 p.m. in August 2018, without specifying with whom she was leaving them. Police transported the children to the Polinsky Children's Center (Polinsky) because there was no one caring for them. At midnight, Mother returned to the shelter in an intoxicated state. Mother admitted to the Agency that she had been drinking alcohol and left her sons alone without any adult responsible for their care. Father was upset when he learned Mother had left their sons unsupervised at night. He told the Agency that he had completed a substance abuse treatment program and could not care for the children because he was living in a sober residential facility for adult males only.

In August 2018, the Agency filed section 300, subdivision (b) dependency petitions alleging D.M. and S.M. had suffered, or there was a substantial risk they would suffer, serious physical harm or illness as a result of Mother's failure to supervise them adequately. At their detention hearing, the court found the Agency had made prima facie showings on the petitions and detained the children out of the home at Polinsky or in foster care. Shortly thereafter, Mother entered a residential substance abuse treatment program. The children adjusted well to their placement in a foster home.

In its September report for the jurisdiction and disposition hearing, the Agency recommended that the court find the petitions' allegations to be true, place the children in foster care, and order reunification services for the parents. Mother had completed a substance abuse treatment program and maintained her sobriety while at the program. Father had regular, positive supervised visits with the children. The Agency recommended that Father receive four- to six-hour unsupervised visitation.

At the October contested jurisdiction and disposition hearing, the court found the petitions' allegations true, removed the children from Mother's custody, found there was no noncustodial parent (i.e., Father) able or willing to assume custody of them, and placed them in licensed foster care. The court also approved the Agency's case plans for Mother and Father and ordered reunification services for them.

In its six-month status review report, the Agency stated that both parents had made moderate progress on their case plans. Mother was unemployed and living in a sober living facility. In October 2018, Father had moved into a subsidized two-bedroom apartment. In January 2019, Father began a new job after resigning from an evening job that had prevented him from attending 12-step program meetings. Father progressed to overnight visitation with the children, which initially was only once per week because of his work schedule and then was expanded to Friday and Saturday nights. The children enjoyed their overnight visits with Father. Father had attended some 12-step program meetings, participated in group parenting classes, and had tested negative on a random drug test. Meanwhile, Mother's visits remained supervised. Although Mother had maintained her sobriety, she had been discharged from her outpatient treatment program and she was concerned whether she would be allowed to remain at her sober living facility. Because of her progress, the Agency allowed Mother to have unsupervised visits with the children beginning in March 2019. Her visits with the children were positive and she responded appropriately to their cues and expressed empathy toward them. The Agency reported that Mother had, in effect, moved in with Father (except for weekends when Father had overnight visitation with the children), because she disliked residing at the sober living facility. Mother was participating in therapy and her therapist

recommended treatment for depression, citing her expressions of hopelessness and apparent chemical imbalance. Her therapist suggested that she undergo a psychiatric medication evaluation. Mother also reported that she was pregnant. The Agency agreed with the parents' plan to have Mother live with Father during the week, so that she could care for the children while Father worked. The Agency recommended that reunification services be continued for both parents for an additional six months.

In an addendum report, the Agency stated that Mother began weekend overnight visits with the children in May 2019. Although she had maintained her sobriety, she had missed two therapy sessions and stated therapy was no longer serving her needs. In early June, Mother was discharged by her therapist because of excessive absences, and the Agency gave Mother a referral for another therapist.

At the continued six-month review hearing in June 2019, the court found both parents had made moderate progress on their case plans, granted overnight visitation for Mother, and ordered continued reunification services for both parents. The court also gave the Agency discretion to allow the parents to have a 60-day trial visit with the children with the concurrence of the children's counsel.

In its 12-month status review report, the Agency stated that the children began a 60-day trial visit with Mother and Father in late June. Father was working full time and Mother provided care for the children during the day. Although Mother and Father were no longer in a relationship, Mother was pregnant and Father was the other biological parent. Although neither parent had participated in any of their Alcoholics Anonymous or Narcotics Anonymous meetings, both had continued to test negative for drugs. The Agency recommended that the court continue the

5

children as dependents and place them with both Mother and Father with family maintenance services.

In early October 2019, the court conducted the 12-month review hearing. The court continued the children as dependents of the court, found placement with Mother and Father would not be detrimental to them, ordered placement of the children with both parents within a few days after its orders, and ordered the Agency to provide them with family maintenance services. The court found Mother and Father had made adequate progress toward alleviating the causes that led to the children's dependency cases. The court set a family maintenance review hearing for six months later.

In early January 2020, the Agency filed section 388 petitions to modify the court's prior October 2019 orders placing the children with Mother and Father. The petitions alleged that the Agency had received a referral reporting sexual abuse by Father against D.M. in mid-December 2019, and that in forensic interviews in late December, D.M. and S.M. had disclosed sexual abuse by Father. The petitions requested new orders suspending Father's visits with the children pending the outcome of the Agency's investigation and that the court's October 2019 orders be changed from placement with both Mother and Father to placement solely with Mother. In support of its section 388 petitions, the Agency submitted an interim review report, stating it had received a referral alleging that while Father was sitting on the couch and playing video games with one hand, he placed his other hand on D.M.'s penis. As part of a safety plan suggested by the Agency, Father agreed to leave the home until Mother found housing and suspended his visits with the children. Four days later, Mother left with the children to a confidential placement and Father then returned to his apartment. The Agency stated that D.M. and S.M. both disclosed sexual abuse by Father

6

during their forensic interviews. The Agency had an open investigation regarding the incident. The Agency also stated that Mother had given birth to a daughter, E.M., in late November 2019.

The court found the Agency made prima facie showings on its section 388 petitions, suspended Father's visits with the children, detained the children solely with Mother, gave the Agency discretion to return their placement to Mother and Father, and set a contested hearing date on the section 388 petitions. That contested hearing was thereafter continued per Father's request. In a March 2020 addendum report, the Agency more specifically described the alleged sexual abuse by Father. Mother stated that she woke up and saw Father had one hand on a video game controller and his other hand on D.M.'s penis over his clothing, while D.M. had his own hand inside of his own pants touching his own penis. Mother stated that she later asked D.M. if Father had been touching him in his "private area" and he said "yes." When an Agency social worker questioned D.M. whether anyone had tried to touch him on his private parts, he replied, "Daddy." When asked whether Father touched him with his clothes on or off, D.M. replied, "On and off." The Agency also described excerpts from the forensic interviews of D.M. and S.M. conducted in late December 2019. Father denied the allegations and stated that Mother "is putting this [in] their heads," but refused to be interviewed without his attorney present. Nevertheless, he was willing to participate in services. The Agency had completed its investigation and substantiated the allegation of sexual abuse by Father.

The court continued the contested section 388 hearing due to the COVID-19 pandemic. In July 2020, the court ordered that Father receive short supervised visits with the children. In an August addendum report, the Agency stated that the children's visits with Father had gone well, and

7

Mother had not observed any negative behaviors after their visits with him. In August, the court set a mid-October date for the contested hearing on the section 388 petitions.

However, in early October 2020, the Agency filed section 387 supplemental petitions on behalf of the children, alleging that Mother had expressed she could no longer care for the children and requested their placement in foster care. In its section 387 detention report, the Agency stated that Mother informed it she could no longer care for her children. She stated her living situation at the shelter was not permanent and "her welfare [was] running out." She stated she did not want to be homeless again. Mother also explained that she and her children "have different lifestyles." She stated: "I'm [B]lack. My kids are [W]hite." Nevertheless, she stated: "This isn't a racist thing." Mother stated she wanted her children to live in a permanent home. An Agency social worker had spoken with Mother's therapist; Mother told her therapist she had become involved in a religion that believed "Black people are the chosen people" and "White people are the devil." Mother did not respond when her therapist asked whether she was giving up her children, who were biracial, because of her religion. Mother quoted the Bible throughout her therapy sessions. The therapist expressed concern whether Mother's religious affiliation influenced her decision to relinquish her children. Her therapist recommended that Mother undergo a psychological evaluation. The Agency recommended that the children be detained in foster care and that they not be placed with Father because of concerns regarding sexual abuse and because he had not mitigated that protective issue.

At the detention hearing on the section 387 petitions, the court detained the children in foster care, and vacated the date for the contested

8

hearing on the section 388 petitions to trail the jurisdiction and disposition hearing on the section 387 petitions. In its subsequent October 2020 jurisdiction and disposition report, the Agency recommended that the court sustain the section 387 petitions and find, by clear and convincing evidence, that D.M. and S.M. should continue to be removed from the custody of their parents pursuant to section 361, subdivision (c). It further recommended that the court find placement with their parents would be detrimental to the children. The Agency recommended that the court place the children in foster care, terminate the parents' services, and set a section 366.26 permanency planning hearing. The court continued the contested section 387 jurisdiction and disposition hearing, as well as the contested section 388 modification hearing, until early January 2021.

In its December 2020 addendum report, the Agency expressed concern that Father had not been forthcoming regarding a domestic violence incident that had occurred with an ex-girlfriend three months before. Although Father had been living with a new girlfriend since October, the Agency was concerned that if a new domestic violence incident were to occur, Father might not have the tools to prevent that violence by understanding his new partner's triggers. The Agency reported that Father's visits with the children were going well. At a June meeting, Mother stated that in April the children had exhibited some sexualized behaviors.

In its final addendum report before the contested section 388 hearing, the Agency reported Father stated that he had not learned anything from his sexual abuse group sessions, calling them weird, and that he disliked the group. The Agency continued its recommendations set forth in its prior reports.

9

On January 4, 2021, the court initially continued the hearing on the section 387 supplemental petitions and then proceeded with the contested hearing on the section 388 modification petitions. The court admitted in evidence the Agency's reports, the videotaped forensic interviews of the children, and transcripts of those interviews. It also heard testimony from Agency social worker Arantxa Buenrostro, Bradley McAuliff (Father's forensic interview expert witness), and Father. After hearing closing arguments, the court found, by a preponderance of the evidence, that there was sufficient new evidence that made the change of its prior October 2019 orders in the best interests of the children and therefore granted the Agency's section 388 petitions. The court placed the children solely with Mother pending further court orders, although they were to remain with their current foster parents until Mother had stable housing. The court also ordered that Father receive individual, and not group, sexual abuse therapy.

Father timely filed a notice of appeal challenging the court's January 2021 orders granting the Agency's section 388 modification petitions. Father requested that we issue a stay of the section 366.26 hearing for the children that the court subsequently set for June 16, 2021. On June 4, 2021, we issued a stay of that hearing, pending the finality of our decisions in case Nos. D078474 and D078633.

DISCUSSION

Father contends the juvenile court applied the wrong legal standard when it granted the Agency's section 388 petitions. We agree. As we explain below, because the Agency's request was for the children's removal from Father, the court was required to make specific findings pursuant to section 361, subdivision (c), which are qualitatively different from the findings the court made under section 388, and which must be made under

10

the higher clear and convincing evidence standard rather than the lower preponderance of the evidence standard the court used.[3]

A. *Additional Background*

In October 2019, the court ordered that D.M. and S.M. be placed with Mother and Father and that the family receive maintenance services. In December 2019, an Agency social worker spoke with Mother and D.M. regarding Mother's allegation that Father may have sexually abused D.M. by touching him over his clothing. Based on their statements, the Agency filed section 388 petitions for D.M. and S.M., asking the court to (1) modify its prior October 2019 orders placing the children with both parents, and (2) issue new orders placing the children solely with Mother, thereby removing the children from Father's physical custody. In its section 388 petitions, the Agency alleged as a change of circumstances or new evidence

---

[3]     The Agency contends Father forfeited his challenge by failing to raise this issue in the juvenile court, and Father's "own counsel argued that the standard was a preponderance of the evidence," but it also concedes "that removal from a parent or a finding of nonplacement with a noncustodial parent requesting custody must be made by clear and convincing evidence." The statement by Father's counsel—"they have to prove that that happened by a preponderance of the evidence at least"—was not entirely clear. Regardless, the Agency alerted the court "to make a true finding by clear and convincing evidence to grant the Agency's [section] 388" petitions. We decline to find the issue forfeited under these circumstances, and we instead exercise our discretion to consider the merits of this legal issue. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 (*S.B.*) ["[A]pplication of the forfeiture rule is not automatic."]; *In re Maria Q.* (2018) 28 Cal.App.5th 577, 590, fn. 5 [declining to find forfeiture of legal issue of whether a specific statute applies after a section 366.26 hearing has occurred]; *In re Alayah J.* (2017) 9 Cal.App.5th 469, 479 [where mother failed to object to juvenile court proceeding with termination of parental rights hearing without first ruling on her section 388 petition, appellate court exercised its discretion to consider the forfeited issue].)

11

the information it obtained in December 2019 regarding Father's alleged sexual abuse of D.M.

At the January 4, 2021 contested hearing on the Agency's section 388 petitions, the court received in evidence the Agency's reports; videotapes and transcripts of the children's forensic interviews; and testimony of expert and percipient witnesses.

After hearing closing arguments of counsel, the court stated that it had viewed the forensic interview videotapes, then reviewed the transcripts, and then viewed the videotapes a second time. It also had reviewed many of the Agency's reports.

The court stated that it found the videotapes of the forensic interviews to be "most persuasive." The court found D.M. and S.M. to be "credible," and indicated they were "sufficiently reliable to this [c]ourt to lead this [c]ourt to find *by a preponderance of the evidence* that there is *sufficient new evidence* that makes the change of the order[s] requested by the Agency in the best interest of the children." (Italics added.) Accordingly, the court granted the Agency's section 388 petitions and placed the children solely with Mother, but ordered that the children "remain in the care of their [foster] caregivers until Mother is appropriately in a position, sustainably, as it relates to housing."

B. *Governing Legal Principles*

"The purpose of the California dependency system is to protect children from harm and to preserve families when safe for the child. (§ 300.2; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) The focus during the reunification period is to preserve the family whenever possible. [Citation.] Until services are terminated, family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody. (§§ 366.21, 366.22; [citation].)" (*Tracy J. v. Superior Court* (2012)

12

202 Cal.App.4th 1415, 1424.)  "[U]ntil the time the section 366.26 [permanency planning] hearing is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.)

In the course of a dependency proceeding, a child may not be removed from his or her parents without establishing that the grounds for removal in section 361, subdivision (c) exist—"that is, the court must find, by clear and convincing evidence, that '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home,' that there are no reasonable means short of removal to protect the minor, and that the [Agency] made reasonable

efforts to avoid removal. (§ 361, subd. (c)(1)[.])" (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 312-313.)[4]

Pursuant to section 388, subdivision (a)(1), "[a]ny parent or other person having an interest in a child who is a dependent child," or the child himself or herself, may petition the court "for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." The moving party must establish (1) there has been a change of circumstance or new evidence; and (2) the modification is in the child's best interests. (*Ibid.*; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

Generally, "[t]he petitioner seeking modification [pursuant to section 388] must satisfy a preponderance of evidence standard." (*In re*

---

4    Specifically, section 361, subdivision (c), provides in pertinent part: "A dependent child shall not be taken from the physical custody of his or her parents, guardian or guardians, or Indian custodian with whom the child resides at the time the petition was initiated, unless the juvenile court finds *clear and convincing evidence* of any of the following circumstances . . . . [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's, guardian's, or Indian custodian's physical custody. . . . The court shall consider, as a reasonable means to protect the minor, each of the following: [¶] (A) The option of removing an offending parent, guardian, or Indian custodian from the home. [¶] (B) Allowing a nonoffending parent, guardian, or Indian custodian to retain physical custody as long as that parent, guardian, or Indian custodian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm." (Italics added.) Section 361, subdivision (e) provides in pertinent part that "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home," and "[t]he court shall state the facts on which the decision to remove the minor is based."

14

*A.R.* (2015) 235 Cal.App.4th 1102, 1116, 1117 (*A.R.*).)  However, "[t]he heightened standard of proof [of clear and convincing evidence] stated in section 361, subdivision (c), applies to an order removing a child . . . from [a] parent's physical custody pursuant to a request for modification under section 388." (*Id.* at p. 1116, citing *In re M.V.* (2006) 146 Cal.App.4th 1048, 1059 ["the clear and convincing standard is applied to protect the rights of parents and guardians, but it is applied to no one else"]; see also Cal. Rules of Court, rule 5.570(h)(1)(A)[5] [when the section 388 request "is for the removal of the child from the child's home, the petitioner must show by clear and convincing evidence that the grounds for removal in section 361[, subdivision ](c) exist"].)

A petition under section 388 "is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.)  The appellant has the burden on appeal to affirmatively show that the juvenile court abused its discretion.  (*Ibid.*)  A court abuses its discretion when it applies the wrong legal standard.  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 150, 167 (*Charlisse C.*) [remanding case for juvenile court to apply the correct legal standard].)

C.  *Analysis Regarding Section 388 Petitions*

As previously noted, the Agency filed petitions under section 388 to modify prior court orders placing the children with both Mother and Father, and instead requested orders placing the children in Mother's sole custody. The juvenile court granted the Agency's section 388 petitions based on the court's "find[ing] *by a preponderance of the evidence* that there is *sufficient*

---

5      All references to rules are to the California Rules of Court.

*new evidence* that makes the change of the order[s] requested by the Agency in the best interest of the children." (Italics added.) Although generally the burden of proof under section 388 is by a preponderance of the evidence, a heightened standard of proof applies to *remove* children from their custodial parent under a section 388 petition. (*A.R.*, *supra*, 235 Cal.App.4th at pp. 1116-1117.) The court's ruling, granting the Agency's section 388 petitions and removing the children from Father based solely on a preponderance of the evidence standard, was therefore in error.[6]

The court addressed the same issue presented here in *A.R.* In that case, the juvenile court's dispositional order placed the dependent child in both parents' physical custody with family maintenance services. (*A.R.*, *supra*, 235 Cal.App.4th at pp. 1104, 1107.) After the father moved out and stopped participating in services, the agency filed a section 388 petition seeking modified orders removing the child from the father and placing the child solely with the mother. (*Id.* at pp. 1104, 1107-1108.) The father appealed from the juvenile court's ruling granting the petition. (*Id.* at p. 1112.)

On appeal, the *A.R.* court discussed section 361, subdivision (c), which sets forth the standard for removal of a dependent child from his or her custodial parents at a dispositional hearing. (*A.R.*, *supra*, 235 Cal.App.4th at p. 1114.)[7] The *A.R.* court explained that, " 'The elevated burden of proof for removal from the home . . . reflects the Legislature's recognition of the rights

---

6    Because the court's October 2019 orders had placed the children in both parents' physical custody, its January 4, 2021 orders placing the children solely with Mother had the effect of removing them from Father's physical custody. Neither party disputes that section 361, subdivision (c) applies here.

7    The relevant language of section 361 is set forth in footnote 4, *ante.*

of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes when it is safe to do so. [Citations.] By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the "bias of the controlling statute is on family preservation, *not* removal." [Citation.] Removal "is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent." [Citation.]' [Citation.]" (*A.R.*, *supra*, 235 Cal.App.4th at p. 1115, fn. omitted, citing *In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*).)

The *A.R.* court then concluded that the section 361, subdivision (c) standard of proof applies not only to initial dispositional orders, but also to subsequent orders, that remove a dependent child from a custodial parent's physical custody. (*A.R.*, *supra*, 235 Cal.App.4th at p. 1115.) The court explained that generally "the petitioner seeking modification must satisfy a preponderance of evidence standard" pursuant to section 388, but "[t]he heightened standard of proof stated in section 361, subdivision (c), applies to an order removing a child who was residing with a parent when the dependency petition was initiated, from the parent's physical custody pursuant to a request for modification under section 388." (*A.R.*, at p. 1116.)

We agree with the *A.R.* court's analysis. Other authorities similarly support our conclusion that a heightened standard applies where, as here, the Agency is requesting modified orders removing a child from his or her parent's care under section 388. (See, e.g., rule 5.570(h)(1)(A) [when the section 388 request "is for the removal of the child from the child's home, the petitioner must show by clear and convincing evidence that the grounds for

17

removal in section 361(, subdivision )(c) exist"]; *Kimberly R.* (2002) 96 Cal.App.4th 1067, 1077 ["a section 388 'modification hearing' petition can ultimately result in removing a child from parental custody (on the higher clear and convincing standard)"]; *In re Victoria C.* (2002) 100 Cal.App.4th 536, 543 (*Victoria C.*) ["It appears the only difference between a request for removal of a child from a parental home and any other order [pursuant to section 388] is a more stringent burden of proof:  a request for removal from a parental home . . . requires clear and convincing evidence that grounds for removal exist."]; *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1078, 1083 (*Michael D.*) [holding that a "parent's burden of proof is to show by a preponderance of the evidence there is new evidence or change of circumstance which makes a change of placement . . . in the best interests of the minor" but "[i]f the governmental agency recommends removal of the child from the home of his parent or guardian, the government must prove the detrimental circumstances exist by clear and convincing evidence."].)[8]

---

[8]     The court in *Michael D.* explained why there are different standards of proof, depending on the type of relief requested, as follows:  "[O]nly governmental agencies petition the juvenile court for a dispositional hearing in order to detain a minor.  When the government intervenes and petitions to remove a child from his or her home, the government must prove the requisite detrimental conditions by clear and convincing evidence.  (§ 361, subd. (b).) . . .  [¶]  When the governmental agency petitions the juvenile court [under section 388] to modify, change or set aside an earlier order (for example an order permitting the child to stay in the home or in a less supervised or restrictive placement) by requesting the child be removed from his or her family home, the state is again interjecting itself into private matters.  *By parity of reasoning, the government should again be required to supply clear and convincing evidence of detriment to the child before a juvenile court is warranted in granting the government's petition to remove the child from his or her home.*  [Citations.]"  (*Michael D., supra,* 51 Cal.App.4th at p. 1085, fn. omitted & italics added.)

In sum, the juvenile court may grant relief under section 388 if a preponderance of the evidence shows changed circumstances or new evidence and the proposed change would promote the best interests of the children. (§ 388, subd. (a)(1); *Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) And under section 361, subdivision (c)(1), the children may be removed from Father's custody only if the court finds by clear and convincing evidence that " '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being' " of the children if returned home, "and there are no reasonable means by which the [children's] physical health *can be protected without removing the [children]*" from Father's physical custody. (See *A.R.*, *supra*, 235 Cal.App.4th at pp. 1114, 1116-1117; rule 5.570(h)(1)(A).) In addition, the juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).) Because the juvenile court did not apply the correct legal standard at this stage of the case, it abused its discretion. (*Charlisse C.*, *supra*, 45 Cal.4th at p. 150.)

The Agency concedes the juvenile court "removed the children from the father via the section 388 petition[s] by a preponderance of the evidence only, thus violating the standard set forth in section 361, subdivision (c)(1)," but it contends the error was harmless. Specifically, the Agency contends the court merely "detain[ed] the children from parental care" pending adjudication of the section 387 petitions and the court "subsequently removed the children from the father" under the clear and convincing evidence standard at that later February 2021 hearing. We are not persuaded by the Agency's arguments. First, the juvenile court did not merely "detain" the children from Father pending its decision at the subsequent section 387 hearing

19

regarding Mother.[9]  Rather, by granting the Agency's section 388 petitions and placing the children solely with Mother, it removed them from Father's physical custody.[10]  Second, even assuming we can consider the subsequent orders in this appeal,[11] the Agency cannot show harmless error by pointing to actions—e.g., the February 2021 orders—that occurred after the January 4, 2021 orders at issue in this appeal.[12]  Finally, as we conclude in our related opinion in *W.M. v. Superior Court* (July 16, 2021, D078633) [nonpub. opn.], the juvenile court's February 2021 orders did not make the requisite findings under section 361, subdivision (c)(1), by clear and

---

[9]  As noted *ante*, the Agency filed section 387 petitions because Mother had expressed she could no longer care for the children and requested their placement in foster care.

[10]  The Agency points to the fact that the court's January 4, 2021 order, which expressly placed the children solely with Mother, also stated that the children would remain with their current foster caregivers until Mother found sustainable housing.  The Agency fails to explain how this provision, which temporarily delayed the children's placement with Mother, establishes that the children were not removed from Father.

[11]  On April 16, 2021, we issued an order stating we would consider the records in case Nos. D078474 and D078633 together.  To the extent our order had the effect of incorporating, or joining, the record in case No. D078633 into or with the record in case No. D078474, we presumably may consider the February 2021 orders in our analysis of the Agency's harmless error claim in this case.

[12]  There is an exception to the rule against considering events occurring after the judgment or order being appealed when a respondent argues the appeal is moot as a result of a subsequent event and should therefore be dismissed.  (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)  The Agency has not moved to dismiss the instant appeal based on mootness and we need not address the merits of any mootness argument in this opinion.

convincing evidence, for removal of the children from Father's physical custody.

The Agency also argues any error in applying the wrong legal standard is harmless because there was substantial evidence to support a finding, by clear and convincing evidence, that the children should be removed from Father's physical custody. To determine whether the court's error in applying the wrong legal standard of proof was prejudicial, we apply the standard in *People v. Watson* (1956) 46 Cal.2d 818. Under *Watson*, reversal is required if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836; see generally *In re Celine R.* (2003) 31 Cal.4th 45, 60 [*Watson* standard for prejudicial error applies in juvenile dependency matters].) The California Supreme Court has " 'made clear that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' [Citation.]" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800 (*Cassim*), citing *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

Here, there was a "reasonable chance" that the result would have been different and the court would have been unable to find, by clear and convincing evidence, that the children would be in danger if returned to Father, and that there were no reasonable means for protecting the children short of removal. As set forth *ante*, the requirements under section 361, subdivision (c) are more stringent, and qualitatively different, than the findings generally required to modify a prior court order under section 388. And there is a significant difference between the preponderance of the evidence standard and the heightened, clear and convincing evidence standard that must be met to remove the children from Father. (*In re Dakota*

21

*J.* (2015) 242 Cal.App.4th 619, 631 ["This [clear and convincing evidence requirement] is a heightened standard of proof, as compared to the preponderance of the evidence standard necessary to find jurisdiction over a child."]; *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238 ["Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt."].)  Although the juvenile court was persuaded in part by the forensic interviews using a preponderance of the evidence standard, the court must be given the opportunity to reassess the entire record under the correct standard to determine whether "the evidence is so clear as to leave no substantial doubt" regarding the children's removal from Father.  (*T.J.*, at p. 1238.)  Moreover, "[a] finding of parental abuse is not sufficient by itself to justify removing the child from the home."  (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 811.)  And the court did not expressly consider whether any conditions reasonably could be put in place to ensure the children's safety in Father's home, as required by section 361, subdivisions (c)(1) and (e).  As previously noted, the court-ordered supervised visitation with Father and the children appeared to be going well and it is reasonably probable further conditions could have been implemented to ensure the children's safety in Father's home.  Based on this record, we conclude there is a reasonable chance that Father would have obtained a more favorable outcome had the juvenile court not erred.  (See *Hailey T.*, *supra*, 212 Cal.App.4th at p. 148 [alternatives "*must* be explored before concluding that removal of a minor from the home is necessary"], italics added; *In re Henry V.* (2004) 119 Cal.App.4th 522, 529 [reversing juvenile court's dispositional order where "the court did not mention the existence of alternatives to out-of-home placement" and there was evidence that appropriate services could have been provided in the family home].)

Our role on appeal is a limited one. We are not determining what the outcome should be on remand. We must instead determine whether it was reasonably probable Father would have achieved a more favorable result under the proper standard of proof. "A ' "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' " (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1068 (*D.P.*).) We conclude the standard was met. There was a reasonable chance that Father would have obtained a more favorable result at the January 4, 2021 hearing had the court applied the correct legal standard in deciding the Agency's section 388 petitions. (*Cassim*, *supra*, 33 Cal.4th at p. 800.) Accordingly, we conclude the juvenile court's error was prejudicial and requires reversal of its January 4, 2021 orders. (*Ibid.*; see *D.P.*, at p. 1070 [juvenile court's error in failing to state the facts supporting removal was not harmless where there was a reasonable probability the court would have adopted an alternative to removal had it considered the option]; *In re Isabella G.* (2016) 246 Cal.App.4th 708, 724 [court's application of " 'a generalized best interest test unguided by the relevant statutory criteria' " was prejudicial error].)

"Because we reverse on the question of the burden of proof to be applied to the determination of the petitions to modify, we need not address the further question of whether substantial evidence supported the [court's ruling on] the petitions." (*In re L.S.* (2014) 230 Cal.App.4th 1183, 1196; see also *In re Frank R.* (2011) 192 Cal.App.4th 532, 539, 540 [reversing order terminating father's parental rights where juvenile court never made the requisite detriment finding by clear and convincing evidence as to the father; "although there may be valid bases for the juvenile court to make a finding of father's unfitness," the appellate court could not make that determination on

appeal, necessitating a remand for "the juvenile court to determine whether, based upon the facts as they exist, a finding of unfitness may be made by clear and convincing evidence"]; *M.C. v. Superior Court* (2016) 3 Cal.App.5th 838, 851 [error in terminating reunification services not harmless where juvenile court applied wrong legal standard and did not make necessary finding, which was "not a finding [appellate court] can or should make in the first instance, particularly given the heightened clear and convincing standard"]; *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 487-488 [where appellate court concluded "that had the trial court applied the correct standard, it is reasonably probable that a result more favorable to [appellant] would have been reached," it declined "to examine the evidence presented at trial and to make a determination as to whether the clear and convincing standard" was met, stating "[t]his is an issue which must be resolved by the trial court in the first instance"].)

D. *Father's Remaining Claims*

Father raises several other challenges to the juvenile court's orders. He contends the Agency was required to file its petitions under section 342 instead of section 388, and he claims there was insufficient evidence to support the Agency's petitions under either statute.

The Agency argues that Father forfeited the purported error in failing to file section 342 petitions instead of section 388 petitions.[13] We agree with the Agency that Father forfeited this argument. (*S.B.*, *supra*, 32 Cal.4th at p. 1293 ["The purpose of this rule is to encourage parties to bring errors to

---

[13]    A subsequent petition may be filed under section 342 when dependency jurisdiction has been established and the Agency alleges new facts or circumstances, other than those sustained in the original petition, that warrant the continuation of jurisdiction. (*Victoria C.*, *supra*, 100 Cal.App.4th at p. 542; *In re Barbara P.* (1994) 30 Cal.App.4th 926, 933.)

the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule."]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501 ["[I]t would be inappropriate to allow a party not to object to an error of which the party is or should be aware, ' "thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." ' "].)[14]

We need not address Father's remaining contentions regarding the sufficiency of the Agency's section 388 petitions, or the sufficiency of petitions that purportedly should have been filed under section 342. As we have concluded, Father forfeited his procedural claim that the Agency should have proceeded under section 342, and we are remanding for the juvenile court to address the sufficiency of the Agency's section 388 petitions under the correct legal standard in the first instance.

## DISPOSITION

The January 4, 2021 orders granting the section 388 petitions are reversed and the matter is remanded with directions that the juvenile court vacate those orders, conduct a new hearing on the petitions, and apply the correct legal standard of proof consistent with this opinion in deciding whether to grant or deny the petitions based on the facts existing at the time

---

[14] Moreover, we note that "[a] section 388 petition may seek any conceivable change or modification of an existing order." (*Kimberly R.*, *supra*, 96 Cal.App.4th at p. 1077.) "Because the statute states 'any' order, we presume the Legislature intended to permit liberal use of this procedure to challenge all types of orders in an ongoing case . . . ." (*Victoria C.*, *supra*, 100 Cal.App.4th at p. 543.)

25

of the further proceedings.  The stay issued on June 4, 2021, is vacated upon finality of our opinions in case Nos. D078474 and D078633.


GUERRERO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.