Filed 1/21/25  In re F.F. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re F.F., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>J.F.,<br><br>      Defendant and Appellant. | E084480<br><br>(Super.Ct.No. J298644)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Helena Rho, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant, J.F. (father), filed a Welfare and Institutions Code section 388 petition,[1] which the juvenile court denied. The court then terminated father's parental rights as to F.F. (minor). On appeal, father contends the court erred in denying his petition without holding an evidentiary hearing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 6, 2023, personnel from plaintiff and respondent, San Bernardino County Children and Family Services (the department), received a referral alleging that A.F. (mother)[2] tested positive for fentanyl and amphetamines after giving birth to minor. Healthcare workers took minor to the neonatal intensive care unit (NICU) because she was suffering from withdrawal symptoms.

Mother admitted using heroin daily throughout her pregnancy; she also admitted using methamphetamine twice weekly until she was six months pregnant. Mother said she lived with father, that he knew she was using drugs, and that he tried to get her to stop using during her pregnancy.

Mother had been the subject of two prior department referrals. In 2016, the juvenile court removed mother's son from her custody due, in part, to his positive test for methamphetamine and opiates at the time of his birth. The juvenile court subsequently terminated mother's parental rights to her son.[3]

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to the appeal.

[3] Mother's son was not father's offspring.

2

Mother had two other children who were no longer in her custody.  A court had granted the father of the oldest child sole legal and physical custody in 2012.  Another court ordered the other child into a legal guardianship with the maternal grandmother in 2014 due to mother's drug use.  Mother had four separate criminal convictions for burglary, possession of methamphetamine, possession of a controlled substance, and reckless driving.

Father denied any current illegal drug use, but said he used marijuana occasionally.  He reported that he and mother had been living together for three years.  Father conveyed that he knew mother used drugs at the beginning of their relationship, and that he had tried unsuccessfully to help her get sober.  He believed that she had only been using methadone during her pregnancy.

In 2016, the juvenile court removed father's daughter from his custody when she tested positive for cannabinoids and methamphetamine at birth.  The juvenile court subsequently terminated father's parental rights to the daughter.[4]  Father had 10 separate criminal convictions, including two convictions for possession of a controlled substance and three convictions for being an addicted felon in possession of a firearm.

Department personnel took minor into protective custody pursuant to a warrant.  On October 10, 2023, department personnel filed a section 300 juvenile dependency petition alleging that mother had an untreated substance abuse problem (b-1), that father knew or reasonably should have known that mother had an untreated substance abuse

_____

[4]  Father's daughter was not mother's offspring.

problem (b-2), that father had an untreated substance abuse problem (b-3), that mother knew or reasonably should have known that father had an untreated substance abuse problem (b-4), that a juvenile court had previously terminated mother's reunification services and parental rights as to minor's sibling (j-5), and that a juvenile court had previously terminated father's reunification services and parental rights as to minor's sibling (J-6). On October 11, 2023, the juvenile court detained minor.

In the jurisdiction and disposition report filed October 30, 2023, the social worker recommended the court find the allegations in the petition true; remove minor from parents' custody; decline to offer either parent reunification services pursuant to section 361.5, subdivision (b)(10) (court previously terminated reunification services as to minor's sibling) and (b)(11) (court previously terminated parental rights as to minor's sibling); and set a section 366.26 hearing. Minor remained in the NICU while she continued to experience withdrawal symptoms.

Father disclosed that he began using methamphetamine and heroin when he was 19 years old.[5] He said he used for four to five years when he was in a relationship with his ex-wife. Father reported he got clean and maintained his sobriety for the previous seven years.

During a child and family team meeting, "the maternal grandmother had disclosed that [father] purchases urine that will pass a drug test and uses [it] to pass his drug screenings at work." He had also left the hospital while visiting minor to purchase urine

_____

[5] Father was 32 years old at the time the social worker filed the report.

4

in case the hospital asked him to drug test. Father showed the maternal grandmother that the purchased urine was stored in a false penis, which he had used previously to pass drug screenings for work.

During the meeting, parents asked if they could go out for a cigarette break. When they returned, "they appeared to be under the influence." "It should be noted, during their interviews immediately before their cigarette break, neither parent exhibited" symptoms. The social worker sent the parents to complete an on-demand drug test.

Mother tested positive for amphetamines, fentanyl, and norfentanyl. Father tested positive for fentanyl.

The social worker spoke to a nurse in the NICU, who reported that minor scored "on the high side" for in-utero drug exposure. Minor's meconium had tested positive for amphetamine. The nurse reported that parents had visited minor the previous day but had not visited for days before.

The maternal grandmother reported that parents were "using drugs and are being deceitful when stating that the mother has recently been sober[,] and the father has been sober for years." She said father had asked her to adopt minor and, once the case was closed, to return minor to parents' care. The maternal grandmother refused. She reported that parents then planned on having the paternal grandmother adopt minor, after which she would return minor to parents.

The maternal grandmother provided the social worker with a text from mother reading "I['d] also rather her be with someone that I know is going to give her back first

5

and foremost and unfortunately, everyone on my side of the family seems to have problems when it comes to that part and I'll be damned if I'm going to let that happen to me again."

At the contested hearing on November 7, 2023, the court found the allegations in the petition true, removed minor from parents' custody, denied them reunification services pursuant to section 361.5, subdivision (b)(10) and (b)(11), and set the section 366.26 hearing.

In the February 14, 2024, status review report, the social worker requested an additional 120 days for a permanent plan of adoption to be implemented. Department personnel had placed minor with the maternal grandparents on November 14, 2023.[6] Parents had been attending visitation regularly; they had missed one visit and tended to be a few minutes late to each visit. The visits had been going well. The court granted the continuance.

In the June 13, 2024, section 366.26 report, the social worker recommended that the court terminate parents' parental rights and order a permanent plan of adoption for minor. Minor appeared "attached and bonded with the current caregivers. The child appears content when being held by both caregivers. The child has been observed looking for the caregivers when they leave the room. The child will reach out her arms

---

[6] A later report reflected that the department had placed minor with the maternal grandparents on October 7, 2023; however, this not only conflicts with other reports as to when the department placed minor with the maternal grandparents but conflicts with the social worker's indication in the October 30, 2023, report that minor remained in the NICU on that date.

6

for the caregivers to pick her up.  The child looks to the caregivers with an expectation that her needs will be met.  The caregivers report that the child is content at most times and appears secure and adjusted around both caregivers."

"The caregivers provide opportunities for age-appropriate learning activities in the home.  The caregivers provide the child with developmentally appropriate educational toys and games."  "The child is also placed with her thirteen-year-old half-sister who the caregivers have had legal guardianship of since she was three years old.  The child appears to have adjusted well to her current placement and appears attached and bonded with both the caregivers and her sibling."

"The prospective adoptive parents are in agreement with the plan of adoption on behalf of the child . . . .  The prospective adoptive parents and child . . . have developed mutual attachments, and the prospective adoptive parents are dedicated to and committed to raising the child to adulthood."

"When asked to describe his relationship with the child, [the maternal grandfather] stated, 'We have a strong bond.  I love her like a daughter, and we are very close.'  [The maternal grandfather] stated, 'I love her like both a daughter and a granddaughter and she is such a blessing.  We have a close loving relationship.'"  "When asked why he wants to adopt, prospective adoptive father stated, 'I want to make sure she has a wonderful and safe home.  I want to be there to support and guide her.  We love her.'  Prospective adoptive mother responded, 'I want to give her a stable, secure, and loving home.  I could not imagine my life without her at this point.'"

Parents had been attending weekly supervised visits with minor. "[T]here were concerns addressed with the Department of the father offering the child snacks that are not age appropriate like a Lollipop on three different occasions. The concerns were addressed."

On June 20, 2024, father filed a section 388 petition requesting that minor be placed with him with reunification services. Father declared that placement of minor with him with reunification services would be in minor's best interest "because I am fully capable to physically and emotionally provide the best life for her." "I have been working on turning my life around so that I can properly provide for my family. I have been visiting with [minor] consistently which has allowed us to build a bond with her even in the short time I get to spend with her I have grown, learned, bettered myself and gotten clean and sober and I believe I am ready to have my daughter back, and it is in the best interest to have her back with her father."

Father maintained there had been a change in circumstances because "I sought help and entered a rehabilitation program Global Medical Detox which I entered on October 20, 2024, and completed my l0-day detox program on October 30, 2024." "[O]n January 23, 2024, I enrolled in the Aegis Treatment Center in Redlands, CA. This treatment includes individual counseling and group therapy. This therapy is helping me to understand my addiction as well as gain the skills and self-assurance to lead a drug free life. I have also been paying for my own drug tests since January 10, 2024, to date and have been testing negative."

Father had completed a 16-hour parenting class.  He had been attending NA/AA meetings.  Father was working and had a three-bedroom condominium in which to house minor.  He had tested negative for controlled substances on 13 occasions between November 30, 2023, and May 17, 2024.  Father attached documentation in support of each of the services and tests, in which he indicated he had participated.

On June 21, 2024, the court denied the petition by order asserting that "the proposed change of order . . . does not promote the best interest of the child."  On June 26, 2024, the court held the contested section 366.26 hearing.  The court found minor adoptable and terminated parents' parental rights.

## II.  DISCUSSION

Father contends the court abused its discretion in denying his petition without holding an evidentiary hearing.  We disagree.

"To prevail on a section 388 petition, the moving party must establish that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child."  (*In re J.T.* (2014) 228 Cal.App.4th 953, 965.)  "Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.'  [Citation.]  The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.  [Citation.]  In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case.  [Citation.]  The petition must be liberally construed in favor of its sufficiency."

(*In re J.P.* (2014) 229 Cal.App.4th 108, 127; accord, *In re K.L.* (2016) 248 Cal.App.4th 52, 62.)

"'A prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause. [Citations.] It is not made, however, if the allegations would fail to sustain a favorable decision even if they were found to be true at a hearing. [Citations.] While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests.' [Citation.]" (*In re K.L.*, *supra*, 248 Cal.App.4th at pp. 61-62; *id.* at p. 62 ["Significantly, Mother did not allege that any of the children's current or prospective placements [were] inadequate."]) "To support a section 388 petition, the change in circumstances must be substantial. [Citation.]" (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)

"Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912; contra, *In re G.B.* (2014) 227 Cal.App.4th 1147, 1158, fn. 5 [allowing argument on whether the mother had made a prima facie case in a § 388 petition "benefitted her by giving her the opportunity to establish a record supporting her request for an evidentiary hearing"].)

"The juvenile court may modify an order if a parent shows, by a preponderance of the evidence, changed circumstance or new evidence and that modification would promote the child's best interests. [Citations.] This is determined by the seriousness of the problem leading to the dependency and the reason for its continuation; the strength of

10

the parent-child and child-caretaker bonds and the time the child has been in the system; and the nature of the change of circumstance, the ease by which it could be achieved, and the reason it did not occur sooner.  [Citation.]  After termination of services, the focus shifts from the parent's custodial interest to the child's need for permanency and stability.  [Citation.]  'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.'  [Citation.]  The denial of a section 388 motion rarely merits reversal as an abuse of discretion."  (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

"A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests."  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, overruled on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)  The "simple completion of . . . classes taken by the [parent] . . . does not, in and of itself, show prima facie that either the requested modification or a hearing would be in the minor's best interests.  [Citations.]"  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 462-463.)

Chronic substance abuse is generally considered a serious problem and, therefore, is less likely to be satisfactorily ameliorated in the brief time between termination of services and the section 366.26 hearing.  (*In re Kimberly F.* (1997) 56 Cal.App.4th 519,

528, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"]; *In re Amber M.*, *supra*, 103 Cal.App.4th at p. 686 [no abuse of discretion in denying § 388 petition where mother established only a 372-day period of abstinence]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 ["[S]even months of sobriety since [the father's last] relapse . . . while commendable, was nothing new"]; *In re Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223 [The father's "recent sobriety reflects 'changing,' not changed, circumstances"]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [Parents' three months of rehabilitation services was insufficient based on their "extensive histories of drug use and years of failing to reunify with their children"]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 206 [Three months of services weighed against 23 years of drug abuse not changed circumstances]; *In re Angel B.*, *supra*, 97 Cal.App.4th at p. 463 [Parent's completion of drug program and the time she had been sober "was very brief compared to her many years of drug addiction . . . and in the past she had been unable to remain sober even when the stakes involved were the loss of her other child"]; but see *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432 [Mother made a prima facie showing where "[s]he had completed numerous educational programs and parenting classes, and had tested clean in weekly random drug tests for over two years"].)

Even if the juvenile court errs in failing to hold an evidentiary hearing on a section 388 petition, that error will be held harmless unless there is a reasonable probability that in the absence of the error a result more favorable to the petitioner would

have been reached. (*In re J.P.*, *supra*, 229 Cal.App.4th at pp. 128-129 [harmless where juvenile court erroneously failed to hold a hearing on a § 388 petition]; *In re G.B.*, *supra*, 227 Cal.App.4th at p. 1162 [erroneous denial of hearing on second § 388 petition harmless where hearing was granted on first petition and where petitioner failed to identify additional evidence she would present at hearing]; *In re Victoria C*. (2002) 100 Cal.App.4th 536, 544 [erroneous denial of hearing on § 388 petition harmless where juvenile court had considered evidence attached to petition in periodic review hearing].)

Here, even assuming the court erred in failing to grant father an evidentiary hearing, we find any error harmless. First, father failed to state a change in circumstances, let alone a substantial change in circumstances. Father had an extensive history of drug abuse, which he asserted began when he was 19 years old and which apparently continued at least until he was 32 years old. In 2016, the juvenile court removed father's daughter from his custody when she tested positive for cannabinoids and methamphetamine at her birth. The juvenile court subsequently terminated father's parental rights to the daughter. Father had two criminal convictions for possession of a controlled substance and three convictions for being an addicted felon in possession of a firearm.

Father reported he had maintained his sobriety for the previous seven years; however, the maternal grandmother reported that parents were "using drugs and are being deceitful when stating that . . . father has been sober for years." "[T]he maternal grandmother had disclosed that [father] purchases urine that will pass a drug test and uses

13

[it] to pass his drug screenings at work." He also left a hospital visit to purchase urine in case the hospital asked him to test. Father showed the maternal grandmother that the purchased urine was stored in a false penis, which he had used previously to pass drug screenings for work.

During a child and family team meeting, parents did not initially appear to be under the influence. They later asked if they could go out for a cigarette break. When they returned, "they appeared to be under the influence."

The social worker sent parents to complete an on-demand drug test. Father tested positive for fentanyl.

Parents also had a plan by which they would bypass having to successfully complete services to get minor back. They would allow the maternal or paternal grandmother to adopt minor, after which one of them would return minor to parents' custody. Thus, at the time the juvenile court bypassed father's reunification services, he had a demonstrable track record of drug use over the course of 13 years, which even the potential loss of his older child did not deter him from continued use.

Father's completion of multiple services and negative drug testing was very commendable. However, even if credited, his efforts would not have sustained a favorable decision on the petition. (*In re J.P.*, *supra*, 229 Cal.App.4th at p. 127; accord, *In re K.L.*, *supra*, 248 Cal.App.4th at pp. 61-62.) There was no evidence that father's drug testing was random, it was not weekly, and it covered a period of less than six months. (*In re Aljamie D.*, *supra*, 84 Cal.App.4th at p. 432 [Mother made a prima facie

14

showing where "[s]he had completed numerous educational programs and parenting classes, and had tested clean in weekly random drug tests for over two years."]; *In re Amber M.*, *supra*, 103 Cal.App.4th at p. 686 [no abuse of discretion in denying § 388 petition where mother established only a 372-day period of abstinence]; *In re Cliffton B.*, *supra*, 81 Cal.App.4th at p. 423 ["[S]even months of sobriety since [the father's last] relapse . . . while commendable, was nothing new"].)  Less than six months of sobriety is simply not sufficient to demonstrate a substantial change in circumstances, rather than merely changing circumstances, particularly when viewed in context with father's 13-year history of drug abuse.

Second, the proposed change was not in minor's best interest.  Here, minor had become "attached and bonded" with the prospective adoptive parents who were relatives. That placement allowed minor to live with her 13-year-old half sister, whom the prospective caregivers had a legal guardianship over since she was three years old.  The prospective adoptive parents' home was the only one minor had known since she had been detained shortly after birth.  (*In re K.L.*, *supra*, 248 Cal.App.4th at p. 62 ["Significantly, Mother did not allege that any of the children's current or prospective placements [were] inadequate."].)

Although father consistently visited, his visits were only once weekly.  Father never had custody of minor, and he never had unsupervised visitation with minor.  To remove minor from a stable placement with the prospective adoptive parents and place her with father was simply not in minor's best interest.  Minor's need for permanency and

stability would not be served by removing her from the only placement in which she had ever lived, in hopes that father could continue to remain sober after such a long history of drug abuse. Thus, the court acted within its discretion in summarily denying father's petition.

## III. DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

FIELDS
J.

MENETREZ
J.

16